**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSEPH BERTE,<br>individually, and on behalf of a class of others similarly situated,<br><br>               Plaintiffs,<br><br>v.<br><br>WIS HOLDINGS CORP and<br>WASHINGTON INVENTORY SERVICE, d/b/a<br>WIS INTERNATIONAL,<br><br>               Defendants. | **Case No. 07 CV 1932 L (NLS)**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF FLSA SETTLEMENT** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT**

George A. Hanson MO Bar # 43450
*admitted pro hac vice*
Matthew L. Dameron MO Bar # 52093
*admitted pro hac vice*
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel:    816-714-7100
Fax:   816-714-7101

Jason S. Hartley CA Bar No. 192514
STUEVE SIEGEL HANSON LLP
550 West C Street, Suite 1750
San Diego, California 92101
Email: hartley@stuevesiegel.com
Tel:    619-400-5822
Fax:   619-400-5832

Bradford B. Lear MO Bar # 53204
*admitted pro hac vice*
Todd C. Werts MO Bar # 53288
*admitted pro hac vice*
LEAR WERTS LLP
2003 W. Broadway, Ste. 107
Columbia, Missouri 65203
Tel:    573-875-1991
Fax:   573-875-1985

# TABLE OF CONTENTS

I.    PROCEDURAL HISTORY.................................................................................. 3

    A.    THE *CHAVEZ* SETTLEMENT ....................................................... 3

    B.    THE *BERTE* MATTER ................................................................. 3

II.    THE SETTLEMENT TERMS ...................................................................... 4

III.    THE COURT SHOULD APPROVE THE SETTLEMENT ................................ 6

    A.    THE PROPOSED SETTLEMENT IS THE PRODUCT OF CONTESTED LITIGATION ............ 7

    B.    THE SETTLEMENT FAIRLY AND REASONABLY RESOLVES A BONA FIDE DISPUTE.... 8

        1.    A Bona Fide Dispute Existed Between the Parties.................................... 8

        2.    The Proposed Settlement Is Fair and Reasonable ...................................... 9

            a.    Public Policy Favors Settlements.................................................... 10

            b.    Substantial Obstacles Exist if the Litigation Continues, and the Settlement Offers Substantial, Immediate Relief......................... 10

            c.    This Was a Complex, Expensive, and Lengthy Case ................... 11

            d.    Party Plaintiffs' Counsel and Plaintiffs Support the Settlement... 11

    C.    SERVICE AWARDS ARE APPROPRIATE .................................................. 12

    D.    THE COURT SHOULD APPROVE COUNSELS' ATTORNEYS' FEES AND COSTS.......... 14

IV.    CONCLUSION................................................................................ 15

i

# TABLE OF AUTHORITIES

<u>**Cases**</u>

Brooklyn Savings Bank v. O'Neil,
   324 U.S. 697 (1945) ................................................................................................. 1

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) .................................................................................. 7

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) ........................................................................... 12, 13

*Fulford v. Logitech, Inc.*,
   No. 08-cv-02041, 2010 WL 807448 (N.D. Cal. March 5, 2010) ............................. 13

*Hill v. World Wide Technology Holding Co., Inc.*,
   No. 4:11CV02108, 2012 WL 5285927 (E.D. Mo. Oct. 25) ..................................... 13

*In re BankAmerica Corp. Securities Litig.*,
   210 F.R.D. 694 (E.D. Mo. 2002) ..................................................................... 9, 11, 12

*In re Pacific Securities Litig.*,
   47 F.3d 373 (9th Cir. 1995) ............................................................................ 7, 10, 12

*In re Sorbates Direct Purchaser Antitrust Litig.*,
   No. C 98-4886, 2002 WL 31655191 (N.D. Cal. Nov. 15, 2002) ............................. 13

*In re Zurn Pex Plumbing Products Liability Litigation*,
   No. 08-MDL-1958, 2013 WL 716460 (D. Minn. Feb. 27) ....................................... 13

*Kelly v. Phiten USA, Inc.*,
   277 F.R.D. 564 (S.D. Iowa 2011) ........................................................................... 13

Lynn's Food Stores, Inc. v. U.S.,
   679 F.2d 1350 (11th Cir. 1982) ...................................................................... *passim*

Officers for Justices v. Civil Service Comm'n,
   688 F.2d 615 (9th Cir, 1982) .................................................................................... 8

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) ................................................................................ 10

*Schulte, Inc. v. Gangi*,
   328 U.S. 108 (1946) ............................................................................................. 6, 7

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ................................................................................ 14

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ......................................................................... 12

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ....................................................................... 14

*Walton v. United Consumers Club, Inc.*,
    786 F.2d 303 (7th Cir. 1986) ...................................................................... 1, 7

*Woo v. Home Loan Group, L.P.*,
    No. 07-CV-202, 2008 WL 3925854 (S.D. Cal. Aug. 25, 2008) ............................. 13

*Yarrington v. Solvay Pharmaceuticals, Inc.*,
    697 F. Supp. 2d 1057 (D. Minn. 2010) .............................................................. 13

Yue Zhou v. Wang's,
    *Rest.*, No. C 05-0279, 2007 WL 172308 (N.D. Cal. Aug. 8, 2007)........................... 6

**Rules**

Federal Rule of Civil Procedure 23 .................................................................. 5, 7

Plaintiffs and Defendants WIS Holdings Corporation and Washington Inventory Service d/b/a WIS International ("WIS" or "Defendants") have reached a settlement of the wage and hour claims of the approximately 4,857 individuals who consented to join this case under section 216(b) of the Fair Labor Standards Act ("FLSA") (*hereinafter* "Party Plaintiffs").  The settlement was the product of arms-length negotiations by experienced counsel and has the salutary effect of (1) providing meaningful relief to current and former WIS employees who joined the lawsuit, and (2) eliminating the risks both sides would bear if this litigation continued to resolution on the merits.  The material terms of the settlement are memorialized in a Settlement Agreement and Release ("Settlement Agreement") that has been contemporaneously filed as Exhibit A to Plaintiffs' Unopposed Motion for Approval of FLSA Settlement.  The Settlement Agreement provides that Defendant will create a settlement fund of $1,840,000.00 ("Settlement Fund"), inclusive of attorneys' fees and costs, from which the wage and hour claims of all opt-in plaintiffs will be resolved.

Unlike a settlement under Federal Rule of Civil Procedure 23, FLSA settlements are not subject to a two-stage process of preliminary approval followed by final approval, and no final fairness hearing is required.  However, court approval of a collective action settlement is generally necessary to effectuate a valid and enforceable release of Party Plaintiffs' FLSA claims.  *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986).  Where, as here, the litigation arises from a private enforcement action under section 216(b) of the FLSA, the standard for approval is straightforward:  a district court should approve a fair and reasonable settlement if it was reached as a result of contested litigation to resolve a *bona fide* dispute between the parties.  *See Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982) (*citing Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)).  Because this settlement

clearly meets the applicable judicial standard for cases brought under the FLSA, the parties respectfully request that this Court approve the Settlement Agreement.

Under the Settlement Agreement, the Net Settlement Fund[1] will be distributed to Party Plaintiffs using a formula based on (1) the number of days on which a Party Plaintiff recorded hours worked during his or her statute of limitations period divided by (2) the total number of days worked by Party Plaintiffs during the applicable statute of limitations period. That fraction will then be multiplied against the Net Settlement Fund to ascertain the amount due to each Party Plaintiff. If the calculation results yields a payment amount less than $50.00, then the Party Plaintiff will receive a minimum payment amount of $50.00.

Plaintiffs also seek service awards for Joseph Berte ("Berte") and the 26 Party Plaintiffs who participated in a deposition ("Participating Plaintiffs"). WIS does not object to or oppose this application. Mr. Berte and the Participating Plaintiffs significantly assisted counsel in the litigation by responding to document requests, meeting with counsel to prepare for each deposition, and participating in a deposition. Due to their particular commitment to the litigation and service to the Party Plaintiffs who did not actively participate in the case, the Court should grant service awards in the amount of (1) $5,000 to Joseph Berte, and (2) $1,000 to each of the other 26 Participating Plaintiffs. The service awards will be paid in addition to the settlement calculation due to Berte and each Participating Plaintiff.

Plaintiffs also seek attorneys' fees and reimbursement for costs associated with the litigation. Party Plaintiffs' Counsel actively litigated this case to resolution on a wholly contingent basis. Party Plaintiffs' Counsel request attorneys' fees and costs from the Settlement

---

[1] Net Settlement Fund is the Settlement Fund after it is reduced by Court-approved attorneys' fees and expenses, settlement administration fees, and service awards. After these deductions, the Net Settlement Fund is approximately $1,180,000. *See* Declaration of George A. Hanson, attached hereto as Exhibit B at ¶8 ("Hanson Decl.").

Fund in the amount of $460,000.00, representing 25% of the Settlement Fund, and $99,321.30 in litigation costs and expenses. Approximately $65,000 will be reserved for the estimated cost of administrating the settlement process. *See* Hanson Decl. at ¶9. WIS does not oppose or object to this application.

## I.   PROCEDURAL HISTORY

### A.   The *Chavez* Settlement

This litigation began on October 3, 2007, styled *Chavez, et al. v. WIS Holdings Corp., et al.*, Case No. 07-1932 (S.D. Cal.). The original lawsuit pled a nationwide collective action under the FLSA and a variety of wage and hour class action claims pursuant to California state law.

In an Order dated June 7, 2010, the Court granted final approval to a class action settlement of the California state law claims asserted in *Chavez*, but not the FLSA claim. *See* Order [Doc. # 189].[2] Thereafter, the case was closed, and in July 2011, the parties agreed to reopen the case as to the single FLSA claim asserted in the First Amended Complaint. *See* Order [Doc. # 272].

### B.   The *Berte* Matter

Following the *Chavez* settlement, the Court granted Plaintiffs' request to substitute the *Chavez* named plaintiffs with a new named plaintiff: Joseph Berte. *See* Order [Doc. # 199] (substituting Joseph Berte "as the named plaintiff for purposes of proceeding with the putative nationwide FLSA class . . ."). Subsequently, WIS stipulated to conditional certification and notice of the FLSA putative opt-in class.

---

[2]       Because the *Chavez* settlement included claims under Rule 23, it required a two-step process. Under the current Settlement Agreement, only FLSA claims are implicated, thereby negating the requirement for a two-step process.

On or about August 24, 2011 notice issued to approximately 29,362 eligible IAs across the country.  By the deadline, 4,651 IAs had opted in to the lawsuit.  Another 206 IAs opted in after the deadline.  As a consequence, Party Plaintiffs include 4,857 current and former IAs.

In January 2012, the parties mediated the dispute with a third-party neutral in San Francisco; the mediation was unsuccessful.

After the failed effort to resolve the case, the parties vigorously litigated the dispute. Plaintiffs served multiple and extensive document requests, and requests for admission under the applicable rules.  Additionally, Plaintiffs deposed two corporate representatives for WIS under Rule 30(b)(6).  Similarly, WIS identified dozens of Party Plaintiffs as potential deponents, and served document requests and interrogatories on many of those individuals.  In total, WIS deposed 27 Party Plaintiffs, including Berte.  During discovery, counsel engaged in several meet and confer conferences, and communicated extensively regarding discovery.

Near the close of discovery, the parties opened negotiations regarding a potential settlement, and reached the agreement memorialized in the current Settlement Agreement.

## II.   **THE SETTLEMENT TERMS**

The critical terms of the Settlement Agreement are as follows:

1. Defendant will create a Settlement Fund in the amount of $1,840,000.00, inclusive of attorneys' fees and costs, incentive payments, and costs of settlement administration. Settlement Agreement at ¶ C.

2. The Net Settlement Fund will be distributed to Party Plaintiffs using a formula based on (1) the number of days on which a Party Plaintiff recorded hours worked during his or her statute of limitations period divided by (2) the total number of days worked by Party Plaintiffs during the applicable statute of limitations period.  That fraction will then be

4

multiplied against the Net Settlement Fund to ascertain the amount due to each Party Plaintiff. If the calculation results yields a payment amount less than $50.00, then the Party Plaintiff will receive a minimum payment amount of $50.00. Settlement Agreement at ¶ C.

3. Each Party Plaintiff will receive a Notice of Collective Action Settlement (the "Notice"), a copy of which is attached to the Settlement Agreement as Exhibit A-2. The Notice explains in clear terms (1) the nature of the settlement; (2) the amount each Party Plaintiff has been allocated pursuant to the settlement; (3) the amount of attorneys' fees, costs, and service awards to be awarded under the Settlement Agreement; and (4) the claims each Party Plaintiff is releasing. The Notice also explains that a check with endorsement language is enclosed for the Party Plaintiff.

4. Each Party Plaintiff that endorses/cashes the check will release WIS from any liability for all wage and hour claims asserted, or which could have been asserted, in this action. Settlement Agreement at ¶¶ A(9); A(10); K. The claims released include any and all wage and hour claims or causes of action, including but not limited to any claim for violations of federal, state, and other wage and hour laws based on or related to unpaid wages arising from employment by Defendant as an Inventory Associate, that have been asserted against Defendant in this litigation. The endorsement language is attached hereto as Exhibit C.

5. Party Plaintiffs' Counsel seeks service awards for the Named Plaintiff in the amount of $5,000.00, and for the Participating Plaintiffs in an amount of $1,000.00 each. Defendant does not oppose or object to this request for incentive payments. *Id.* at ¶ D.

6.     Party Plaintiffs' Counsel seek approval of fees and costs in the amount of 25% of the Settlement Fund totaling $460,000.00.  Party Plaintiffs' Counsel also seek approval of recovery of their litigation costs incurred in the total amount of $99,321.30 as well as the costs of administrating the settlement.[3]   The requested fee is less than Party Plaintiffs' Counsel's lodestar incurred to date.  Defendants do not oppose or object to this request for attorneys' fees and costs.  *Id*. at ¶ E.

## III.   THE COURT SHOULD APPROVE THE SETTLEMENT

The proposed settlement reflects a reasonable compromise of the Parties' claims and defenses.  FLSA claims "can only be settled under the authority of either the Secretary of Labor or the district court."  *Trinh v. JPMorgan Chase & Co.*, (S.D. Cal. March 3, 2009)N" \s "WSFTA_6e5713b02f034d74941add26c8e78e3b" \c 3 *Trinh v. JPMorgan Chase & Co.*, No. 07-CV-01666, 2009 WL 532556 at *1 (S.D. Cal. March 3, 2009) (internal citations omitted).  To approve a settlement of FLSA claims, a court must "determine whether the settlement is a fair and reasonable resolution of a bona fide dispute."  *Id.* at *1 (quoting *Yue Zhou v. Wang's Rest.*, No. C 05-0279, 2007 WL 172308, *1 (N.D. Cal. Aug. 8, 2007) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982))).  After evaluating the settlement, the court may enter a stipulated judgment, "after scrutinizing the settlement for fairness."  *Lynn's Food Stores*, 679 F.2d at 1354 (*citing Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946)).

Thus, the Court's inquiry as to the fairness of an FLSA settlement arising from a private enforcement action is two-staged.  First, the Court must be satisfied that the settlement was the product of "contested litigation."  Second, the Court must inquire as to whether the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the parties over FLSA

---

[3]      The cost of administering the settlement is estimated at approximately $65,000. *See* Hanson Decl. at ¶9.

6

coverage.  Typically, courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness.  *Id.* at 1354.   If the proposed settlement reflects a reasonable compromise over contested issues, the court may approve the settlement to promote the policy of encouraging settlement of litigation.  *Id.*; *see also Walton*, 786 F.2d at 306; *In re Pacific Securities Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("When reviewing complex class action settlements, we have a 'strong judicial policy that favors settlements.'") (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

Based on the contested nature of this litigation, the fairness of the settlement, and the approval of similar FLSA settlements, this Court should readily conclude that this settlement is also a reasonable resolution of a *bona fide* dispute in contested litigation.

## A.   THE PROPOSED SETTLEMENT IS THE PRODUCT OF CONTESTED LITIGATION

There is no question that the proposed settlement is the product of contested litigation. This litigation has been pending in some form since 2007.  In 2011, after the Court re-activated the case so the parties could litigate the non-California FLSA piece, the parties conducted extensive factual investigations and propounded thorough discovery regarding the issues raised in Plaintiffs' First Amended Complaint and Defendants' Answer.  Party Plaintiffs' Counsel interviewed numerous current and former Inventory Associates from various locations around the country, compared their findings, reviewed voluminous documents, analyzed pay records, and deposed Defendants' corporate representatives under Rule 30(b)(6).  Similarly, Defendants analyzed its documents and deposed 27 Party Plaintiffs. The depositions in this case required Party Plaintiffs' Counsel to travel to a variety of locations, sometimes more than once.  In addition to their factual investigations, the parties also undertook considerable legal analysis of

the various issues implicated in this case, and they participated in several meet and confer conferences regarding discovery.

The settlement of this lawsuit resulted only after (1) a failed effort at formal mediation in early 2012, and (2) several direct negotiations between the parties. Prior to the settlement, the parties had a full opportunity to analyze the pertinent factual and legal issues and assess the strengths and weaknesses of the claims and defenses at issue.

Thus, it is apparent that the settlement "is not the product of fraud or overreaching by, or collusion between, the negotiation parties . . ." *Trinh*, 2009 WL 532556 at *1 (citing *Officers for Justices v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir, 1982)). Accordingly, the Court should readily conclude that the proposed settlement was the product of contested litigation.

**B.   THE SETTLEMENT FAIRLY AND REASONABLY RESOLVES A BONA FIDE DISPUTE**

The second stage of the Court's settlement approval inquiry focuses on two issues. The first issue is confirming the existence of a *bona fide* dispute between the parties. The second issue involves a review of the fairness and reasonableness of the proposed settlement. As explained below, the Court should conclude that both issues encompassed within the second prong of the Court's inquiry are satisfied.

**1.   A Bona Fide Dispute Existed Between the Parties**

Plaintiffs alleged that Defendants violated the FLSA because they (1) required IAs to perform work during the inventories without compensation, and (2) failed to pay IAs for travel time spent on company vans traveling to and from inventory sites.

Defendants adamantly denied Plaintiffs' allegations. It argued that IAs (1) were compensated for time spent working at inventories; (2) that travel time in the company vans is not "work" for purposes of the FLSA because the vans were voluntary; and (3) a significant

number of the workweeks at issue did not cross the 40-hour threshold necessary for FLSA overtime liability even when taking into account the alleged uncompensated time.  Moreover, Defendants contended that, even if overtime was owed, the number of minutes per week in which Plaintiffs actually worked more than 40 hours was *de minimus*, thereby severely restricting the amount of overtime pay that could be reasonable claimed.

If Plaintiffs' allegations were all correct, then Defendants would be faced with the prospect of a significant monetary verdict in Plaintiffs' favor, as well as the duty to pay both attorneys' fees and costs.  If Defendants' arguments were correct, then Plaintiffs faced a potential dismissal of their claims and no recovery.  Accordingly, the Court should conclude that a *bona fide* dispute existed between the parties over the alleged FLSA violations and the various defenses asserted.

### 2.    The Proposed Settlement Is Fair and Reasonable

This settlement was the product of arm's length negotiations by experienced counsel and has the salutary effect of providing substantial relief to all Party Plaintiffs and eliminating the inherent risks both sides may bear if this complex litigation continued to resolution on the merits.  An initial mediation, several months of extensive and active discovery, and follow-up negotiations ultimately allowed the parties to bridge the significant gap remaining between their respective settlement positions and to obtain this resolution.  Under these circumstances, a presumption of fairness should attach to the proposed settlement.  *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness); s*ee also In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of

litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.").  Moreover, consideration of several additional relevant factors confirms that the proposed settlement is fair and reasonable:

### a.   Public Policy Favors Settlements

The familiar adage that "public policy favors settlements" is particularly true in complex cases, such as this, where substantial resources can be conserved by avoiding the time, cost and rigor of protracted litigation.  *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing policy of encouraging settlement of FLSA litigation); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1149 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."); *In re Pacific Securities Litig.*, 47 F.3d at 378.  There can be no doubt that substantial time and money, both for this Court as well as the Parties, has been conserved in fairly settling now as opposed to continuing litigation for at least the next year, if not longer.

### b.   Substantial Obstacles Exist if the Litigation Continues, and the Settlement Offers Substantial, Immediate Relief

As outlined above, the Parties disagree about the merits of Plaintiffs' claims and the viability of the various defenses.  The risk of decertification still weighed heavy in this litigation and even if Plaintiffs survived decertification, the outcome of a trial on the merits was far from a foregone conclusion.  Even if Plaintiffs established liability, they still faced considerable obstacles in proving both the fact and amount of damages.

Although the range of potential recovery at trial may have been greater than obtained through this settlement, it is equally possible that such recovery would have been less.

Consequently, this settlement provides a certain result and value now, as opposed to a speculative result that may occur later.  The substantial benefit that will be received by Party Plaintiffs immediately and made certain by the settlement is a significant factor weighing in favor of the Court's approval of the proposed settlement.  *See In re BankAmerica*, 210 F.R.D. at 701 ("As courts have recognized, when considering settlement agreements they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation.  In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush.") (internal quotations omitted).

### c.      This Was a Complex, Expensive, and Lengthy Case

This case certainly qualifies as complex, both in establishing liability and in proving damages.  Many issues of fact and law remain uncertain and would have to be resolved at or before trial.    Additionally, both parties face the prospect of a lengthy and complicated certification consideration.    Any trial would be lengthy, costly, and complex to resolve the alleged violations of the FLSA's overtime requirements during each week of the recovery period.  Regardless of the outcome at trial, post-judgment appeals would be likely.    Accordingly, the complexity, expense, and duration of litigation weigh in favor of approving the proposed settlement.

### d.      Party Plaintiffs' Counsel and Plaintiffs Support the Settlement

During this highly-contested litigation, Party Plaintiffs' Counsel have gained a comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses and have acquired ample evidence on which to assess the proposed settlement.  Based on their knowledge of the facts and the applicable law, as well as their experience in similar

11

FLSA actions, Party Plaintiffs' Counsel believe the settlement is fair, reasonable, and adequate. *See* Hanson Decl. at ¶¶ 2, 3, 6, 7. "Although the Court is not bound by the counsel's opinion, their opinion is nonetheless entitled to great weight." *In re BankAmerica*, 210 F.R.D. at 702; *see also In re Pacific Securities Litig.*, 47 F.3d at 378 ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation."). Additionally, Plaintiff Joseph Berte has executed the Settlement Agreement indicating his approval of the agreement. Accordingly, this Court should conclude that the proposed settlement reflects a fair and reasonable resolution of a *bona fide* dispute over FLSA coverage and approve the settlement.

### C.   SERVICE AWARDS ARE APPROPRIATE

Party Plaintiffs' Counsel seek a service award for the named Plaintiff, Joseph Berte, in the amount of $5,000.00. Furthermore, Party Plaintiffs' Counsel seek service awards for the 26 Participating Plaintiffs who participated in depositions in an amount of $1,000.00 each.

The Ninth Circuit has identified three factors that a Court should consider in approving a service award: "[1] the actions the plaintiff has taken to protect the interests of the class, [2] the degree to which the class has benefitted from those actions, and [3] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton v. Boeing Co.*, 327 F.3d 938, 976 (9th Cir. 2003)(citing and quoting factors from *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). The first two factors clearly support the requested award, as the efforts of Mr. Berte and the Participating Plaintiffs who participated in depositions resulted in a settlement fund that makes monetary relief available to the other Party Plaintiffs. The third factor also supports the service awards as the proposed recipients have made significant investments of time and effort in this matter, including: communicating with Party Plaintiffs' Counsel concerning discovery,

meeting with Party Plaintiffs' Counsel in advance of each deposition to prepare, sitting for a lengthy deposition, subjecting themselves to cross examination, and answering individual discovery propounded by Defendants.  Additionally, in some cases, the Participating Plaintiffs traveled to the deposition location site, even when the deposition occurred two to three hours away from the witness's residence.  In Party Plaintiffs' Counsel's opinion, these individuals have acted in the very best interest of the Party Plaintiffs at all times and are deserving of the service awards requested on their behalf.  *See* Hanson Decl. at ¶14.

Regarding Mr. Berte, "[b]ecause a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook*, 142 F.3d at 1016.  Mr. Berte is eminently deserving of a $5,000 service award, for without his willingness to step forward this settlement would not have been possible.  He is directly responsible for the benefits of this settlement made available to the other Party Plaintiffs. Furthermore, Mr. Berte as the named plaintiff accepted the responsibility and notoriety of agreeing to act as a representative and putting his name on the First Amended Complaint.   *See* Hanson Decl. at ¶14.

Courts routinely approve awards in these amounts.  *See, e.g., Woo v. Home Loan Group, L.P.*, No. 07-CV-202, 2008 WL 3925854, at *6 (S.D. Cal. Aug. 25, 2008) ("The Court further approves a payment to the Class Representative . . . as an enhancement in the amount of $7,500 for the initiation of this action, services performed, and the risks undertaken . . ."); *Fulford v. Logitech, Inc.*, No. 08-cv-02041, 2010 WL 807448, at *3 n.1 (N.D. Cal. March 5, 2010) (collecting cases awarding service payments ranging from $5,000 to $40,000); *In re Sorbates Direct Purchaser Antitrust Litig.*, No. C 98-4886, 2002 WL 31655191, at *3 (N.D. Cal. Nov. 15,

2002) (approving $7,500 service awards).[4]   Additionally, in this case, the Court previously approved service awards for the prior named class representatives in the amount of $7,500.  *See* Order [Doc. # 189] at ¶ 14.

### D.   THE COURT SHOULD APPROVE COUNSELS' ATTORNEYS' FEES AND COSTS

In an effort to avoid a second litigation over fees, the parties have agreed to settle their dispute over an award of attorneys' fees, costs, and expenses.  The Settlement Agreement provides that Party Plaintiffs' Counsel will be paid $460,000 for attorneys' fees, an amount equivalent to 25% of the Settlement Fund which is the accepted "benchmark" in the Ninth Circuit.  *See Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("25 percent of the fund [is] the 'benchmark' award that should be given in common fund cases."); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (noting that 25% is the benchmark and stating that "Ninth Circuit cases echo this approach.").[5]

This amount represents a reduction on Party Plaintiffs' Counsel's current lodestar in the case – a delta that will increase as counsel spends additional time and resources answering class member questions and administering the settlement. In these circumstances, the Settlement Agreement's provision for payment of Party Plaintiffs' Counsel's fees and costs is reasonable and should not be disturbed.

To date, Party Plaintiffs' Counsel's lodestar is approximately $1,000,000 – significantly higher than the $460,000 in attorneys' fees provided for by the Settlement Agreement.  This

---

[4]     *See also In re Zurn Pex Plumbing Products Liability Litigation*, No. 08-MDL-1958, 2013 WL 716460, *2 (D. Minn. Feb. 27); *Hill v. World Wide Technology Holding Co., Inc.*, No. 4:11CV02108, 2012 WL 5285927, *1 (E.D. Mo. Oct. 25); *Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 572 (S.D. Iowa 2011); *Yarrington v. Solvay Pharmaceuticals, Inc.*, 697 F. Supp. 2d 1057, 1068 (D. Minn. 2010).

[5]     *Viscaino* also articulated the factors to consider whether to depart from this benchmark. *See* Order [Doc. # 189] at ¶ 13; *Viscaino*, 290 F.3d at 1048-50.  None of those factors are present here.

discrepancy will only grow as additional work is performed to administer the settlement and answer class member questions. *See* Hanson Decl. at ¶9. A total of 2,769.7 hours has been expended at attorney rates which range from $275 to $625 per hour and professional staff rates which range from $125 to $225 per hour. *See* Hanson Decl. at ¶12. Another reference point often used to determine the overall reasonableness of requested attorneys' fees is the "blended" hourly rate. Taking the total fees requested ($460,000) and dividing it by the total time in the case (2,811.30), results in an overall blended rate of $166.08.[6]

Given that the requested fee is based on the Ninth Circuit benchmark of 25% and results in a blended hourly rate that is a significant discount from the rates typically charged by Party Plaintiffs' Counsel and approved by this and other District Courts, the attorney-fee provisions in the Settlement Agreement are eminently reasonable.

## IV.    CONCLUSION

As set out above, the settlement agreed to by the parties represents a reasonable resolution of a bona fide dispute.  It was reached as a result of arms-length negotiation after significant efforts on both sides in the litigation. The service awards, litigation expenses, and attorneys' fees are all reasonable in light of the complexities of this case. And most importantly, each member of the class will receive meaningful relief in the form of a cash payment that is tied to the extent of their tenure in Defendants' employ during the relevant time period.

Wherefore, for those reasons and those more fully explained above, Party Plaintiffs request that the Court approve the parties' settlement as follows:

a)  Approve the Settlement Agreement as reasonable and fair, including the Notice attached thereto;

---

[6]     Party Plaintiffs' Counsel also seek approval for reimbursement of $99,321.30 in costs and expenses. *See* Hanson Decl. at ¶ 9.

b) Approve a $1,840,000 Settlement Fund;

c) Approve the payment of $5,000 from the Settlement Fund to Plaintiff Joseph Berte as a service award;

d) Approve the payment of $1,000 from the Settlement Fund to each Party Plaintiff who participated in a deposition as a service award;

e) Approve the payment of $460,000 from the Settlement Fund to Party Plaintiffs' Counsel as attorneys' fees;

f) Approve the payment of $99,321.30 from the Settlement Fund to Party Plaintiffs' Counsel as reimbursement for costs and expenses;

g) Approve the costs of administrating the settlement process to be paid from the Settlement Fund; and

h) Dismiss all Party Plaintiffs' claims with prejudice.

Dated: February 6, 2014                    Respectfully submitted,

STUEVE SIEGEL HANSON LLP

_____/s/ Matthew L. Dameron_____
George A. Hanson MO Bar # 43450
(*Pro hac vice*)
Matthew L. Dameron MO Bar # 52093
(*Pro hac vice*)
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel:    816.714.7100
Fax:    816.714.7101

STUEVE SIEGEL HANSON LLP
Jason S. Hartley CA Bar No. 192514
550 West C Street, Suite 610
San Diego, CA 92101
Email: hartley@stuevesiegel.com
Tel:    619.400.5822
Fax:    619.400.5832

LEAR WERTS LLP
Bradford B. Lear MO Bar # 53204
(*Pro hac vice*)
Todd C. Werts MO Bar # 53288
(*Pro hac vice*)
2003 W. Broadway, Ste. 107
Columbia, Missouri 65203
Tel:    573.875.1991
Fax:    573.875.1985

**ATTORNEYS FOR PLAINTIFFS**